**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                                          :
                                                      :
      Plaintiff,                                 : Civil Action No. 23-cv-2122
                                                      :
v.                                                    : **COMPLAINT FOR VIOLATIONS OF**
                                                      : **SECTIONS 14(a) AND 20(a) OF THE**
EVOQUA WATER TECHNOLOGIES                             : **SECURITIES EXCHANGE ACT OF**
CORP., GARY A. CAPPELINE, NICK                        : **1934**
BHAMBRI, LISA GLATCH, RON C.                          :
KEATING, MARTIN J. LAMB, JULIA A.                     : **JURY TRIAL DEMANDED**
SLOAT, SHERRESE CLARKE SOARES,                        :
LYNN C. SWANN, and PETER M. WILVER,                   :
                                                      :
      Defendants.                                :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Evoqua Water Technologies Corp. ("Evoqua or the "Company") the members Evoqua's board of directors (the "Board" or the "Individual Defendants"), and Xylem Inc. and affiliates ("Xylem" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Evoqua and Xylem.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on March 8, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Fore Merger Sub, Inc., a Delaware corporation and a direct, wholly-owned subsidiary of Xylem ("Merger Sub") will merge with and into Evoqua with Evoqua surviving the transaction as a direct, wholly-owned subsidiary of Xylem (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on January 22, 2023 (the "Merger Agreement"), each Evoqua stockholder will receive the right to receive 0.48 shares of Xylem common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 25% of the newly combined company common stock outstanding and Xylem shareholders will own approximately 75% of the newly combined company common stock outstanding.

3. As discussed below, Defendants have asked Evoqua's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and BofA Securities, Inc. ("BofA" and together with Goldman Sachs, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Evoqua's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Evoqua stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Gary A. Cappeline has served as a member of the Board since 2014 and is the Chairman of the Board.

11. Individual Defendant Nick Bhambri has served as a member of the Board since 2014.

12. Individual Defendant Lisa Glatch has served as a member of the Board since 2020.

13. Individual Defendant Ron C. Keating has served as a member of the Board since December 2014 and is the Company's President and Chief Executive Officer.

14. Individual Defendant Martin J. Lamb has served as a member of the Board since 2014.

15. Individual Defendant Julia A. Sloat has served as a member of the Board since 2022.

16. Individual Defendant Sherrese Clarke Soares has served as a member of the Board since 2021.

17. Individual Defendant Lynn C. Swann has served as a member of the Board since 2018.

18. Individual Defendant Peter M. Wilver has served as a member of the Board since 2018.

19. Defendant Evoqua is a Delaware corporation and maintains its principal offices at 210 Sixth Avenue, Pittsburgh, PA 15222. The Company's stock trades on the New York Stock Exchange under the symbol "AQUA."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

22. Evoqua provides water and wastewater treatment systems and technologies, and mobile and emergency water supply solutions and contract services for industrial, commercial, and municipal water treatment markets in the United States and internationally. It operates through

two segments, Integrated Solutions and Services, and Applied Product Technologies. The Integrated Solutions and Services segment offers outsourced water service contracts, capital systems and related recurring aftermarket services, parts and consumables, and emergency services for treating process water, utility water, and wastewater. This segment also provides odor and corrosion control services and drinking water treatment systems for municipalities. It serves manufacturing, healthcare, pharmaceuticals, biotech, power, microelectronics, chemical processing, food and beverage, and refining industries. The Applied Product Technologies segment provides advanced filtration and separation products, such as VAF self-cleaning filters, Ionpure electrodeionization systems, and Vortisand filtration systems, as well as filter presses and related consumables, and aftermarket products for customers in the microelectronics, pharmaceutical, and power end markets. It also offers disinfection solutions, including chemical and non-chemical disinfection technologies comprising low and medium pressure ultraviolet, ozone, onsite hypochlorite generation, and chlorine and chlorine dioxide systems for municipal drinking water, industrial, light manufacturing, commercial, and aquatics markets. In addition, this segment provides wastewater technologies, including biological treatment, clarification, filtration, nutrient removal, biosolid, and field-erected biological wastewater treatment plant solutions; and aftermarket and retrofit solutions. Further, it offers aquatics and electrochlorination solutions. The Company was incorporated in 2013 and is headquartered in Pittsburgh, Pennsylvania.

23.     On January 23, 2023, the Company and Xylem jointly announced the Proposed Transaction:

> WASHINGTON--(BUSINESS WIRE)-- Xylem Inc. (NYSE: XYL), a leading global water technology company ("Xylem"), and Evoqua (NYSE: AQUA), a leader in mission-critical water treatment solutions and services, today announced they have entered into a definitive agreement under which Xylem will acquire Evoqua

in an all-stock transaction that reflects an implied enterprise value of approximately $7.5 billion.

As water risks rise in global importance, this transaction unites two companies with a shared focus on solving the world's water challenges by addressing customers' and communities' most critical needs. Building on Xylem's global leadership in water solutions and Evoqua's leadership in advanced treatment solutions and services, the combined company will be uniquely positioned to develop and deliver an even more comprehensive offering of innovative solutions.

Evoqua, a leader in North America water treatment, complements Xylem's distinctive portfolio of solutions with advanced water and wastewater treatment capabilities, a powerful and extensive network of service professionals and access to a number of attractive industrial markets with resilient, recurring revenue streams. Evoqua's solutions, including digitally enabled offerings, optimize and outsource mission-critical water treatment systems for customers in high-growth sectors such as life sciences, microelectronics, power and food and beverage. In addition, Evoqua is a leader in the remediation of emerging contaminants, including PFAS.

Xylem and Evoqua generated over $7 billion in combined revenue in the 12-month period ending September 30, 2022, with $1.2 billion in adjusted EBITDA. The combination unlocks compelling new growth opportunities and is expected to deliver run-rate cost synergies of $140 million within three years, driven by scale efficiencies in procurement, network optimization and corporate costs. In addition, the transaction allows Xylem to maintain its strong balance sheet, which provides the combined company with significant strategic flexibility and optionality.

"Solving the world's water challenges has never been more urgent. Our acquisition of Evoqua creates a transformative global platform to address water scarcity, affordability and resilience at even greater scale," said Patrick Decker, President and CEO of Xylem. "The combined company delivers an unparalleled portfolio of advanced technologies, integrated services and application expertise across the water cycle."

"Together, our complementary businesses will be even more strongly positioned to help our customers and communities tackle their most challenging water needs," continued Decker. "We are

excited about building the world's most powerful platform for solving water alongside our Evoqua colleagues."

"Joining forces with Xylem is an exciting opportunity for Evoqua and for our team members. This combination provides a platform to leverage our combined strengths and increase our impact to better address the most pressing and increasingly complex global water challenges," said Ron Keating, Evoqua's President and CEO. "I am incredibly proud of what our team at Evoqua has achieved to date, providing mission-critical water treatment solutions to the market and for our customers. Along the way, we have earned a reputation for quality, safety and reliability around the world. Together with Xylem, we will drive innovation on a larger scale for our customers, positioning us to create even more value for our stakeholders."

**Transaction Details**

Evoqua shareholders will receive 0.480 shares of Xylem for each Evoqua share, representing a value of $52.89 per share or a 29 percent premium based on Xylem and Evoqua closing prices as of January 20, 2023.

The transaction, which is anticipated to close in mid-2023, is subject to approval by shareholders of Xylem and Evoqua, the receipt of required regulatory approvals and other customary closing conditions.

Upon closing, Xylem shareholders will own approximately 75 percent and Evoqua shareholders will own approximately 25 percent of the combined company on a fully diluted basis.

Following the closing, the combined company will continue to be led by Patrick Decker, Xylem's President and CEO. Two current members of the board of directors of Evoqua are expected to join Xylem's board of directors.

**Advisors**

Lazard and Guggenheim Securities served as financial advisors and Gibson, Dunn & Crutcher LLP served as legal advisor to Xylem. Goldman Sachs & Co. LLC and BofA Securities served as financial advisors and Jones Day served as legal advisor to Evoqua.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Evoqua's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

25. On March 8, 2023, Evoqua and Xylem jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Xylem which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Xylem and Evoqua prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the

8

Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For *Xylem Management Forecasted Financial Information*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2025: Adjusted EBIT, Adjusted EBITDA (burdened by SBC), Adjusted EBITDA (unburdened by SBC) and Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

28. For *Xylem View of Evoqua Forecasted Financial Information*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2025: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

29. For *Xylem Integrated Forecasted Financial Information*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBIT, Adjusted EBITDA, Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of

the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

30. For *Evoqua Management Forecasted Financial Information Including M&A*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2025: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

31. For *Evoqua Management Forecasted Financial Information Excluding M&A*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2025: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

32. For *Evoqua Integrated Forecasted Financial Information*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2025: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

33. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

35. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measures to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Evoqua*

36. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Evoqua Standalone*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for Evoqua; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.5%; (iii) the inputs and assumptions underlying the terminal year exit EV/EBITDA multiples ranging from 18.0x to 22.0x; (iv) the inputs and assumption underlying the

perpetuity growth rates of 5.1% to 7.3%; (v) the weighted average cost of capital of Evoqua; (vi) the inputs and assumptions underlying the discount rate of 7.4% for the purposes of discounting the estimated benefits of Evoqua's net operating losses for the second through fourth quarters of fiscal year 2023 and for fiscal years 2024 and 2025; (vii) Evoqua's net debt; and (viii) the number of fully diluted outstanding shares of Evoqua common stock.

37. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Pro Forma Combined Company*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for the combined company; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.5%; (iii) the inputs and assumptions underlying the terminal year exit EV/EBITDA multiples ranging from 21.0x to 25.0x; (iv) the inputs and assumption underlying the perpetuity growth rates of 5.7% to 7.7%; (v) the weighted average cost of capital of the combined company; (vi) the inputs and assumptions underlying the discount rate of 5.1% for the purposes of discounting the estimated benefits of the combined company's net operating losses for the second through fourth quarters of fiscal year 2023 and for fiscal years 2024 and 2025; (vii) net debt of the pro forma combined company; and (viii) the number of pro forma fully diluted outstanding shares of combined company common stock.

38. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Evoqua Standalone*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of multiples of EV/NTM EBITDA of 17.0x to 21.0x to estimates of Evoqua's forward adjusted EBITDA unburdened by stock-based compensation for each of the fiscal years 2023 and 2024; (ii) the "certain periods" in which Goldman Sachs observed the current and historical EV/NTM EBITDA multiples for Evoqua; (iii) the estimates of NTM EV/EBITDA as reported by IBES; (iv) the amount of Evoqua's net debt for each of the fiscal years 2023 and

2024; (v) the number of fully diluted outstanding shares of Evoqua common stock for each of fiscal years 2023 and 2024; and (vi) the inputs and assumptions underlying the illustrative discount rate of 10.5%.

39. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Pro Forma Combined Company*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of multiples of EV/NTM EBITDA of 18.0x to 22.0x to estimates of pro forma forward adjusted EBITDA unburdened by stock-based compensation for each of the fiscal years 2023 and 2024; (ii) the "certain periods" in which Goldman Sachs observed the current and historical EV/NTM EBITDA multiples for Evoqua and Xylem; (iii) the estimates of NTM EV/EBITDA as reported by IBES; (iv) the amount of the combined company's net debt for each of the fiscal years 2023 and 2024; (v) the projected year-end number of shares of the combined company common stock for each of fiscal years 2023 and 2024; and (vi) the inputs and assumptions underlying the illustrative discount rate of 10.5%.

40. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Registration Statement fails to disclose: (i) the financial metrics for each transaction selected by Goldman Sachs for the analysis; (ii) the net debt of Evoqua as of December 31, 2022; (iii) the number of fully diluted outstanding shares of Evoqua common stock as of December 31, 2022.

41. With respect to Goldman Sachs' *Premia Paid Analysis*, the Registration Statement fails to disclose: (i) the sixteen all-stock acquisition transactions observed by Goldman Sachs for the analysis; and (ii) the premium of each transaction observed.

42. With respect to BofA's *Selected Publicly Traded Companies Analysis* for Evoqua, the Registration Statement fails to disclose: (i) the financial metrics and multiples of each company

selected by BofA for the analysis; and (ii) the inputs and assumption underlying the 2023 adjusted EBITDA multiples of 16.0x to 20.0x and the 2024 adjusted EBITDA multiples of 14.5x to 18.5x.

43. With respect to BofA's *Discounted Cash Flow Analysis* for Evoqua, the Registration Statement fails to disclose: (i) the terminal values for Evoqua; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) the inputs and assumptions underlying the terminal forward multiples ranging from 16.0x to 20.0x; and (iv) the weighted average cost of capital of Evoqua.

44. With respect to BofA's analysis of equity research analyst price targets for Evoqua, the Registration Statement fails to disclose: (i) the research analysts observed; (ii) the price targets published by each research analyst; and (iii) the inputs and assumptions underlying the 10.7% discount rate applied to the range of the price targets.

45. With respect to BofA's discounted cash flow analysis for Evoqua based on the *Evoqua Management Forecasted Financial Information Excluding M&A*, the Registration Statement fails to disclose: (i) the terminal values for Evoqua as calculated by BofA; (ii) the inputs and assumptions underlying the terminal forward multiples of 16.0x to 20.0x; and (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

46. With respect to BofA's *Selected Publicly Traded Companies Analysis* for Xylem, the Registration Statement fails to disclose: (i) the financial metrics and multiples of each company selected by BofA for the analysis; and (ii) the inputs and assumption underlying the 2023 adjusted EBITDA multiples of 17.5x to 23.0x and the 2024 adjusted EBITDA multiples of 16.0x to 21.0x.

47. With respect to BofA's *Discounted Cash Flow Analysis* for Xylem, the Registration Statement fails to disclose: (i) the terminal values for Xylem; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) the inputs and assumptions

underlying the terminal forward multiples ranging from 18.0x to 22.0x; and (iv) the weighted average cost of capital of Xylem.

48. With respect to BofA's analysis of equity research analyst price targets for Xylem, the Registration Statement fails to disclose: (i) the research analysts observed; (ii) the price targets published by each research analyst; and (iii) the inputs and assumptions underlying the 10.3% discount rate applied to the range of the price targets.

49. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 9.0% to 11.0%; (ii) the inputs and assumptions underlying the perpetuity growth rate of 2.5% to 3.5%; and (iii) the decrease in cash resulting from the Proposed Transaction.

50. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

54. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

55. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

56. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Evoqua within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Evoqua, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Evoqua, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Evoqua, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

61. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 13, 2023                             **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*